UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |  |
|---|---|---|
| ELENA B. CANTU, et al., | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-95 |
| | § | |
| BAY AREA HEALTHCARE GROUP, LTD., | § | |
| | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

On July 27, 2006, the Court instructed the parties to brief the issue of subject matter jurisdiction in this case. After reviewing the briefs (Dkt Nos. 29 & 30), the entire record, and the applicable law, the Court concludes, as it is authorized to do sua sponte, that it does not have subject matter jurisdiction in this case. Accordingly, the Court is of the opinion that this case should be remanded to the state court from which it was removed.

**I. Background**

Plaintiffs, all residents of Nueces County, Texas, are the adult children of the decedent, Julia Garza, who died on May 6, 2006, after coronary bypass surgery at Defendant Corpus Christi Medical Center in Corpus Christi, Texas. Plaintiffs filed their first amended – and still operative – petition in state court on May 6, 2005, asserting wrongful death and survival claims against the hospital sounding in fraud, negligence, and various other state law theories arising under the common law and statutes of Texas.

The petition also alleges that Defendant is a subsidiary of HCA Inc. and was, at the time of Garza's death, engaged in a wide-ranging criminal scheme with it's parent corporation and other subsidiaries and affiliated entities, to violate federal law related to, inter alia, physician referrals,

kick-backs, and government reimbursements for medical procedures.  Although not referencing any federal statute in particular, the petition goes on to claim that Defendant's alleged criminal scheme contributed to Garza's death by creating a "lethal environment" in which the hospital valued profit over the medical needs of its patients.  Notably, Plaintiffs make no allegations that any federal law was violated in the course of Defendant's provision of medical services to Garza.  Rather, the gist of Plaintiff's claim, whether credible or not, seems to be that the alleged violations of federal law are indicative of motive and constitute at least some evidence that Defendant is liable under Plaintiffs' state law claims.

When pressed via discovery requests to describe their reliance on federal law in greater detail, Plaintiffs responded by citing a number of cases, including *United States v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997), related to a spate of well-publicized cases involving HCA's alleged violations of various federal laws, including the False Claims Act, the Medicare anti-kickback statute, and the Anti-Self-Referral Act.  Defendant interpreted Plaintiffs' petition together with the discovery responses as presenting federal questions that were within the ambit of federal subject matter jurisdiction under 28 U.S.C. § 1331 and removed the case to this Court on August 31, 2005.  Plaintiffs, for reasons not obvious to this Court, did not file a motion to remand, but instead waited until the parties filed their proposed joint pretrial order on the eve of trial to state their objection to the exercise of federal jurisdiction in this case.

Defendants argue that Plaintiffs' have either artfully asserted federal causes of action without specifically referencing the underlying federal statutes in their petition or, alternatively, that Plaintiffs' claims belong to that exceedingly narrow class of cases described by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308

(2005). For the reasons stated herein, the Court disagrees and concludes instead that Plaintiffs' vague references to violations of federal law in what otherwise appears to be a state wrongful death action are nothing more than window dressing that do not come close to stating causes of action based on federal law or raising federal issues of the sort that would properly confer federal subject matter jurisdiction.

## II. Discussion

Under 28 U.S.C. § 1441(b), a defendant may remove to the federal courts "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States;" i.e., those actions presenting a federal question. The defendant bears the burden of demonstrating that a federal question exists. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995).

The Supreme Court has stated that there are, in general, two categories of cases that present claims "arising under" federal law. The first and far more common category includes those cases in which the plaintiff pleads a cause of action created by federal law. *Grable*, 545 U.S. at 312. Defendant argues that Plaintiffs' petition should be construed to assert causes of action created by federal law under the False Claims Act, 31 U.S.C. § 3729; the medicare anti-kickback Statute, 42 U.S.C. § 1320a-7b; and the Anti-Self-Referral Act, 42 U.S.C. § 1395nn. While acknowledging that no direct references to these statutes appear on the face of Plaintiffs' petition, Defendant asks the court to read those causes of action into the petition by referencing Plaintiffs' discovery responses.

A close reading of Plaintiffs' petition reveals that nowhere does it state any affirmative claims for relief for violations of federal law. Rather, as Plaintiffs' state in summarizing their

description of Defendant's prior bad acts, the Petition merely alleges that their decedent's death occurred during a time in which, again, allegedly, "the Hospital was illegally operating to provide medical care to its patients based solely upon economic benefit to the hospital and without regard to the medical needs of the patient." Dkt. No. 1-6 ¶ 7. Defendant is unable to direct the Court to any single passage, and the Court has not found any on its own, indicating that Plaintiffs seek to hold Defendant liable under any of the unmentioned federal statutes. Under these circumstances, the Court is convinced that Plaintiffs' bleak description of alleged bad acts by Defendant is, at best, an effort to establish, in part, their state law negligence claims and, at worst, a calculated rhetorical ploy to heap opprobrium on a defendant with incendiary references to past legal problems. Regardless, the Court concludes that Plaintiffs' petition clearly does not indicate or give notice of any causes of action created by federal law such that this case properly belongs in the broader category of cases described by the *Grable* court in which removal is appropriate under § 1331.

Having eliminated this case from the broader category of proper removal candidates, Defendant is left to engage in the uphill battle required to convince the Court that Plaintiffs' claims alternatively belong within the perimeter of the other "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction,'" in which "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312.

According to the Supreme Court's formulation of this second type of "arising under" jurisdiction in *Grable*, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. At stake in *Grable* was the ownership of real property that had been seized by the Internal Revenue Service

4

in satisfaction of Grable's federal tax delinquency and later sold at auction. Grable filed a state law action in Michigan against the purchaser, Darue, to quiet title to the land based on allegations that Darue's deed was not valid because the IRS had failed to give notice of the seizure in the manner required by 26 U.S.C. § 6335(a). *Id.* at 310. Darue removed to federal court, arguing that Grable's claim, though based on state law, "depended on the interpretation of the notice statute in the federal tax law." *Id.* Holding that Darue had properly removed, the Supreme Court noted the following salient features of Grable's claim that rendered it amenable to federal subject matter jurisdiction: (1) the meaning of the federal statute at issue was an essential element of Grable's claim insofar as the Michigan law providing for his quiet title action required him to establish the basis for the superiority of his claim to title; (2) the meaning of the notice statute was actually in dispute; (3) the case presented an important issue of federal law given the Government's strong interest in the prompt collection of delinquent taxes; and (4) because the case presented a rare instance in which a state title action raised a contested issue of federal law, resolution by a federal court would "portend only a microscopic effect on the federal-state division of labor." *Id.* at 315.

The Supreme Court distinguished its *Grable* holding a year later in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S.Ct. 2121 (2006). The plaintiff in *Empire* was a private insurance carrier that had contracted with the federal government to provide health insurance to federal employees. The litigation originated when the administrator of a beneficiary's estate initiated state tort litigation against a third party alleged to have caused the beneficiary's injuries. The carrier did not participate in the litigation, but sued the estate in federal court for reimbursement when the case was resolved through settlement. The federal statute governing the provision of health insurance benefits to federal employees by private carriers, the Federal Employees Health Benefits Act of 1959

(FEHBA), 5 U.S.C. § 8901 *et seq.*, has a preemption clause applicable to coverage disputes, but is silent with respect to disputes concerning the subrogation or reimbursement rights of carriers. *Id.* at 2127–30. On appeal of the district court's order granting the defendant estate's motion to dismiss for lack of subject matter jurisdiction, the United States filed an amicus brief arguing, inter alia, that the exercise of federal jurisdiction was proper on the authority of *Grable* because the meaning of the FEHBA provisions relied upon by the plaintiff carrier for its reimbursement claim was, in the words of the *Grable* court, "a necessary element of the [carrier's] claim for relief." *Id.* at 2136 (quoting *Grable*, 545 U.S. at 312) (citation to Brief for United States as Amicus Curiae omitted).

In rejecting the Government's argument, the *Empire* court noted that the parameter of the "arising under" jurisdiction described in *Grable* embraced a "special and small" subset of the broad group of cases in which federal issues were raised by causes of action created by state law. *Id.* The court held that the federal issue in *Empire* was "poles apart" from *Grable* for two primary reasons: (1) the dispute in *Grable* "centered on the action of a federal agency ... and its compatibility with a federal statute;" whereas *Empire* centered on the settlement resolution of a state court personal injury action between private parties; and (2) *Grable* presented a nearly-pure issue of law that, once resolved, would guide numerous other cases; whereas the application of federal law in *Empire* was "fact-bound and situation-specific." *Id.* at 2137. Summarizing it's *Grable* holding, the Supreme Court noted that "*Grable* emphasized that it takes more than a federal element to open the arising under door. This case cannot be squeezed into the slim category *Grable* exemplifies. *Id.* (quotation and citation to *Grable* omitted).

If *Empire* is "poles apart" from *Grable*, then this case is too. The vague federal violations that Plaintiffs seem bent on establishing in this wrongful death action involving private parties

6

would be heavily fact-specific and have little precedential effect.  Moreover, it is imminently clear that Plaintiffs could theoretically recover on all of their state law theories without establishing a single violation of federal law.  It simply cannot be said, therefore, that prevailing on any federal issue stated in Plaintiffs' petition would be a condition precedent to recovery.  Finally, and perhaps most fatal to Defendant's argument, is the sea-change in the delicate state-federal balance that would result if federal courts, starting with this one, concluded that all state court wrongful death actions against health care facilities were eligible for the exercise of "arising under" jurisdiction so long as plaintiffs asserted that federal healthcare laws were violated in chronological proximity to and with some causal effect on the underlying injuries.  Based on the foregoing, this Court can only conclude that the federal issues referenced by Plaintiffs' petition are insubstantial and that exercise of federal jurisdiction over them would work a great disturbance in the "congressionally approved balance of federal and state judicial responsibilities."  Accordingly, the Court is of the opinion that this case should be, and hereby is, REMANDED to the state court from which it was removed.

It is so **ORDERED**.

Signed this 28th day of March, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE